Sorry about that. Good morning. May it please the court, I'm James Laughlin and I represent the appellant Paul Torres. With the court's permission I'd like to reserve two minutes of my time for rebuttal. The next case will address whether the Central District's jury trial ban, which has been in place for over a year now, is permissible or whether it's a violation of the Sixth Amendment of the Speedy Trial Act. This case presents a related issue that if the jury trial ban is permissible, then the Speedy Trial Act or the Due Process Clause prohibit the ongoing detention of people like Mr. Torres. And when I say people like Mr. Torres, I mean people who have been accused of a crime but are still cloaked in the constitutional presumption of innocence and have invoked their constitutional and statutory right to a speedy trial. Mr. Torres was scheduled to go to trial on April 7th, so the last 11 months of his detention have been based purely on the jury trial ban that resulted from the pandemic. Even if the district court were to send out jury summons tomorrow, which is unlikely, jury trials would not resume for another seven weeks. And even then, based on the protocols that have been adopted by courts that have done trials in the past several months, it may be that only a few courtrooms in the given time. So all these things add up to Mr. Torres isn't getting his trial anytime soon. Given the jury trial ban, Mr. Torres repeatedly asked the district court for release since June. And every time he was told, not yet, the trial's just around the corner and you can revisit this when down the road if things don't change. But things didn't change and he still wasn't released. By refusing to do that, the district court violated Section 3164, a provision of the Speedy Trial Act that requires incarcerated pretrial detainees to be brought to trial within 90 days or release. There's no dispute that the excludable time provisions of 3161H apply to that 90-day limit. The question of first impression in this court is how do they apply? In particular, how does it apply to the ends of justice condition in particular? Does it require a separate analysis from the Speedy? Mr. Lockwood, doesn't Lewis answer that for us? No, Your Honor. I mean, other than the plain language in the statute, doesn't Lewis, it seems like that's what Lewis looks at the plain language of the statute and applies it. Exactly, Your Honor. That's all Lewis did was look at the plain language of the statute, which we don't contest. The 3161H applies to 3164. That's not the question of how it applies. And that's something that Lewis just never got into because it wasn't raised in that case. So it was something that was just mentioned in passing. If we agree that Lewis didn't engage in reason analysis and the question is how it applies, how the same standard applies, how should the court have applied it? Well, I think what's required, and this goes to the plain language of the statute as a whole, is it requires a separate analysis for the 70-day clock and the 90-day detention clock. I understand, sir. And I'm asking, how would it differ? How would the outcome differ here? Could you get to the nuts and Sure. Sure. Again, for purposes of this case, we're assuming that the jury trial ban justifies extending the speed of trial. So the question then becomes a much different question is, if it's reasonable to extend the trial, is it also reasonable to keep people like Mr. Torres in custody throughout that long period, which is a completely different issue? I'll grant you that. I'm just waiting for you to get to the question then, if you could apply it, please. Mr. Laughlin, I think I'd like to know the same, answer that question, and I'll ask it a little bit differently. I don't know if it will help you or not, but what findings should have been made by the district court and how would it have been different than the analysis that was conducted by the district court in this case? I think the court would have started at the same point, which is we can extend the trial out for this reason. And then the longer the time went on, the question had to be, is it fair to keep Mr. Torres in custody throughout this indefinite period of detention? Because certainly by the late October, it was clear that a trial was not around the corner. This would go on for a while. So it was not just a matter of we can get this trial done in a couple of days. So the court should have balanced the totality of the circumstances at that point and come to the conclusion that we can kick out the trial, assuming what happens in Olson, but we can't keep Mr. Torres in custody because it's just- Why not? Counsel, why not? What findings weren't made? There were no findings made. First of all, the judge never made any findings separate from the other findings. The judge found a flight risk and dangerousness. Do those factors just go away at some point in time when it becomes, as you put it, unfair to detain pretrial? Yes. I would certainly say at the time the court decided the final motion, whatever weight, flight of balancing the ends of justice, it became a weaker and weaker factor as time went on because the other factors, the length of the delay, the indefiniteness of the delay, the unprecedented jury trial ban outweighed those factors. And again, the Congress itself- So your challenge is not that the judge didn't consider those factors. It's just you disagree with the outcome of the I think you're- Is it your issue that you just disagree with the result of the district court's review of those factors? No, not at all. And maybe if I can clarify, we're talking about two different things. With regard to the Speedy Trial Act ends of justice issue, the judge expressly adopted the government's position that I don't have to do any kind of separate analysis for the detention clock than I do for the- So she did not do analysis that I think is required. Right. Counsel, we understand that. And in my hypothetical, I'm trying to give you all of that and then ask you how would the application, a separate application differ? Because it seems to me she did consider a flight risk and she did consider dangerousness and she considered your client's serious criminal history and the nature of the charges and also the very strong case against him and the fact that he was facing over 10 years. So I don't mean to put words in your mouth, but I think all that's baked in to her consideration. Why am I wrong about that? Well, first of all, I mean, it's a technical matter. If we're going to separate these out into two separate issues, which they are, the discussion that you're talking about was made in the context of the due process analysis, not in the- And how does the outcome differ in this case? In the due process analysis? Or the- I think we've all been trying to get you to go to the- You think the district court erred by not doing a separate analysis. I'm asking you to go to that analysis and tell us how would it change? How would it differ? What wasn't considered? Well, I think that certainly by the end, the ends of justice analysis would have looked similar to the due process analysis that I included in my brief. So let me say there. So you balance certain factors there. Again, sometimes these are factors that have been cited in other cases, but aren't applicable here, but given the unique situation. But the main thing is the length of the detention and the reasonably anticipated future detention. So here we have an unprecedented jury trial ban that's going to continue on for who knows how long. And so at the moment of December, January, when this decision was made, she knows that he's been in custody for several months and will likely be there several more. The courts have recognized that delays even approaching one year are presumptively prejudicial for Sixth Amendment purposes. So we're definitely- So when the whole system shuts down for that long, that's a significant factor. Yes. The next factor that the government thinks should be considered is who's responsible for the delay. And I think that that's an issue regarding the remedy in Olson, but for the due process analysis in this kind of situation, the responsibility for the delay isn't really a reasonable factor. What the court should have looked at was the unfairness of half of the system shutting down. The half that is functioning is we're arresting people, we're putting them in custody, and we're making them trials. When you got to the point where the district court denied relief, so much time had passed that the length of delay and the reason for it outweighed all the other factors, including those typically encompassed by the Dail Reform Act, the things like danger and flight risk. Even the Congress and the Speedy Trial Act with a 90-day limit recognize there's a point where somebody has to be released no matter how much of a danger or flight risk they are. And I think we are at that point. And I see that I'm way over my time. Thank you. All right. Thank you. Mr. Alden. Good morning, Your Honors. May it please the court, Bram Alden for the United States. I want to start with the Lewis case, which I do think does indeed foreclose the statutory argument. In that case, this court had to decide whether the same delay that was accounted for under 3161H was also excluded under 3164. And it decided that it did. That aligned with the Calabresi case in which one of the defendants did contest his detention under 3164. Again, the court held that the analysis was straightforward, and there was a categorical exclusion under both statutes. Mr. Alden, Mr. Laughlin says that, I guess he doesn't dispute that Lewis applied that, but argues that it didn't say how it should be applied. And I'm trying to figure out what that, you know, how that plays out here, what that means. So what's your response to that? But obviously he thinks, Mr. Laughlin thinks it should, you know, how it's applied is different than what Lewis, than just simply saying that it can't be applied. Understood. I think the government's position is that it's a categorical exclusion, but once you get beyond that, if the court is to hold that there is a different application, I think that I agree with largely what Judge Christin is getting at, which is that the factors that the judge considered here would indeed be the same sorts of factors that the judge would consider if there's going to be a different application of the ends of justice provision under 3164. And I think, at least in this case, is that what you mean? Forgive me for interrupting, but you mean in this case? In this case, and I think that I would enumerate those factors, either based on the due process factors that the court and other circuits have enumerated, or potentially 3142G factors, the bail factors that a magistrate judge or district court looks at in the first instance. And those are largely overlapping. The result would be the same in this case. But I would start with the first factor from the due process analysis being the length of the detention. And the government didn't concede in its brief that the length of detention here would weigh in the defendant's favor. But I want to concede that now, because at this point, the defendant has been in custody for over a year. And in fact, by the time of his trial, it will be 21 months. So I would concede that that factor does weigh in the defense's favor. But then you have to get into the rest of the factors that, one, Gale Fuso applies the who's responsible for the delay factor. And then other circuits have looked at the seriousness of the offense, the dangerousness, and the evidence of danger and flight risk. And should we be looking at that here as well? I think that's what this court should look at for the due process analysis. And I would, again, say that for 3164 purposes, it's not necessary to replicate that analysis. But that if this court holds that it's not simply a categorical excluded for 3161H, excluded for 3164, that those same sorts of factors would come into play. Because they really are what determines whether the ends of justice warrant a continued trial or a continued detention. Mr. Alden, is that May setting? I thought it was May. Mr. Laughlin was, I think, saying April, but I thought it was May. Is that a real trial date? If it is, notices presumably are getting ready to go out to jurors now. A, what's the status? And then I have another question. And obviously, I'm not privy to all of the court's internal processes. But my understanding from the public comments is that the court has been looking at the California blueprint for a safer economy, which has color-coded tiers. And on Sunday, this past Sunday, March 14th, both Los Angeles and Orange counties moved down from the purple tier to the lower red tier. And that they can now move down to the orange tier three weeks from March 14th. And that then it takes seven weeks after they move to the orange tier for jury summonses to go out and trials to commence. By my calculation, that would be exactly the date of the current trial if all things went as perfectly as we hope they do, which is to say that the numbers continue trending in the right direction and the counties continue moving down. So I would say May 25th is a real date, but I wouldn't be surprised if it does get continued beyond that, hopefully not much more. Is there ever a time when detention is just too long in light of the fact that these are people who haven't been convicted and are presumed innocent? And if so, should this court establish a standard that says that? No, Your Honor. There is never a bright line time at which detention becomes excessively prolonged. In Gelfuso, this court said for due process purposes, it has to be a case-by-case assessment and at least two other circuits. And I think more than that have now said that there is no bright line. That said, I think that the year period that the defendant is advocating as when the first factor weighs in his favor is a reasonable amount of time to establish as at that point, the first factor does weigh in his favor. Beyond that though, I'm sorry, were you going to ask a question, Judge Murguia? Go ahead and finish your thought on that. I was just going to say beyond that, that the rest of the factors will always have to come into consideration. And that is why other circuits have held that detentions far in excess of a year are constitutionally permissible. What is Mr. Torres's anticipated sentence? Is he looking at a mandatory minimum of 10 years? He's looking at a mandatory minimum of five years and then his guidelines range, the low end is 14 years up to, I believe, almost 20. Okay, thank you. Just to make sure I understand, and I think you were addressing this earlier, but is whether or not a person is detained relevant in your view, is it relevant to the ends of justice inquiry or does it come in under the process sort of analysis? I would say for purposes of a speedy trial act claim, which this next defendant will raise in the next case that I would say that the ends of justice should consider whether or not the person is detained. For purposes of 3164, I would maintain that that's not part of the analysis, but that if the court transplants ends of justice, as opposed to just purposes of due process analysis, of course, it's part of the analysis because that's the due process claim is that he is unnecessarily detained for too long of a time. So for this case, I would encourage the court to look at that factor, obviously, for part of the due process analysis. And for the next case, I think it should be taken into consideration for the speedy trial claim. But beyond that factor, I think the court really does need to look at what the additional factors this court has enumerated are and what the additional factors that other courts have enumerated are. There's really no dispute here about dangerousness and flight risk. Defending concedes that, the magistrate judge found that, the district court repeatedly found that, and those findings were well supported based on his five prior felony convictions, his criminal record, his failure to appear and his failure to report to probation, which in fact led to his outstanding warrant for his arrest. Those factors do weigh heavily in favor of continued detention. The fact that trials have been suspended because of the pandemic and not because of any wrongdoing on the part of the government also strongly weighs in favor of continued detention and against the due process claim. Because whether or not the U.S. Attorney's Office is responsible or the court, it is simply the fact that no party here can bear responsibility. And that shouldn't weigh against the government when it can't have a trial, even if it wants to. Counsel, forgive me for interrupting again, but the district court recognized, of course, the pandemic is not the government's fault. And yet she recognized that at some point, this person would not be detained indefinitely. At some point this would, right? He has a very you don't seem to be acknowledging that. I absolutely acknowledge that. And I think that's the first factor. And that's why I've already conceded that that factor weighs in his favor. But that factor doesn't outweigh the others. Well, again, I've been pretty clear, I think, about my view of the other factors and how they should be applied in this case. I'm just asking you to project because we've got, of course, a whole lot of other cases piling up with many of the same considerations. And it's not that hard to imagine a circumstance where somebody wouldn't have overwhelming evidence of guilt, right? Wouldn't be facing so much jail time, wouldn't have a criminal history. So it would get to be a much closer call. Wouldn't you concede? I concede that entirely. I am sure there are cases where it would violate due process because the factors weigh in the defense's favor. Mr. So let me ask you, I know that Judge Lynn asked you if we should have a set time period of what is too long. And you've said no. But let me ask you about this case. At what point, I know what you anticipate, and you're very hopeful that the trial will happen in May. But at what point do you think we will have reached a due process violation here in this case? I hesitate to say a definite number because I do think that the magistrate judge and district court both remained open to considering the point at which this case will have reached a due process violation because the time has been simply too long. But I can say if I were the Assistant United States Attorney going into the district court and we had reached a period of time that was closer to the two-year mark, I would probably want to ask my supervisors for permission to concede that that is simply too long. And I certainly hope that it never comes to that, and I don't think it will. I see that my time is up. Yes. Thank you very much. Thank you very much. Mm-hmm. Mr. Laughlin, you don't have any time, but I'm going to give you two minutes. Thank you very much. Mm-hmm. I'd like to say, particularly given the government's concession today, I think that if the court, I would ask that if the court agrees with my interpretation of the Speedy Trial Act, which is consistent with their own, that there is a separate analysis applied to the 90-day clock and the 70-day clock. I think that requires remand for the district judge to reevaluate it after the court gives that guidance. I don't think we should assume that the court would do the same analysis just because she did something similar in the due process analysis. So I think that's... Can you identify a factor she didn't consider that you think she should have considered? Had we applied the test you want her... Had she applied the test you want and separately analyzed under the statutory analysis? Is there something she missed? Well, I do think that she missed the importance of the extended period of time mitigating whatever purported flight risk or danger she saw. I think that in the end, no matter what other stuff, what other things she cited, her analysis really boiled down to the typical Bail Reform Act factors. And she didn't seem to indicate that there had to be any movement on that in these particular circumstances after this length of time. And I think that's something I hope that the court can clarify for the lower court saying that to some extent are just using the Bail Reform Act as usual and basically saying something has to give. It's been too long and if people aren't being outright released, at least there has to be some change in the criteria in which they are released. Does the court have anything further? Thank you, Mr. Alda and Mr. Lawson. Thank you very much. We're ready to proceed to the next case on our docket, which is United States of America versus Olson.
judges: Murguia, Christen, Lynn